My name is Natalie Armour. I represent the appellants in this appeal. They are a group of investors who were misled by Appellee Heartland Bank into making substantial investments in an oilfield services company called HII Technologies. The investors raised four issues in this commercial fraud case, and I'm going to focus on what we call the red flags issue. The district court erred in determining that Heartland Bank negated, as a matter of law, the investors' reliance on Heartland's representation that it would permit HII to acquire water transfer. Justifiable reliance is generally a question of fact, and while a person may not justifiably rely on a representation if there are red flags indicating that reliance is unwarranted, case law tells us these red flags must be unambiguous. They must be so bright red that they warrant removing the issue of justifiable reliance from the jury. The district court here erred in holding that three provisions of the securities purchase agreement and one provision of the third modification agreement raised red flags. The third modification agreement is an agreement between HII and the bank. The securities purchase agreement is between HII and the investors. There is no agreement between the investors and Heartland Bank. That is one of several factors that distinguishes this case from the case that the district court and Heartland Bank rely heavily upon. That case involved a contract between the plaintiff and the defendant. That contract contained a provision that spoke to the very issues between the parties, so much so that the plaintiff's vice president stated this raises a red flag. It is a curveball and the plaintiff should secure outside legal opinions. Further, the representation in that case was a representation about a fact as opposed to the representation of future performance, which is what we have here and what there was in the Jacked Up v. Sarah Lee case that this court handed down in 2017. So let's turn to these four provisions that the district court held raised red flags. The first is section 3.1i of the securities purchase agreement. It is a representation by HII that no event is expected to occur that is required to be disclosed by HII. The water transfer acquisition could not be disclosed at the relevant time and Fleming, the owner of HII, testified to this. He said this is because of securities rules to prevent puffery and the promotion of micro cap securities. He testified that this is why there would be two agreements, why the parties understood this. There would be the consent agreement, which was never effectuated, but it was the agreement that would discuss the water transfer acquisition. And then there was the third modification agreement, which waived the covenants. That was one of the other promises. The district court's reasoning with respect to this flag is contrary to the record because it misinterpreted Fleming's testimony. Now the district court, on page 39 of the opinion, footnote 70, stated that it was the water transfer transaction that had to be disclosed at the time the third modification was signed. But that is not the testimony and neither side disputes that the testimony is that the third modification had to be disclosed when it was signed. And I'll refer the court to page 20 of the defendant's motion for summary judgment that recognizes that that is the case. So this provision does not raise a red flag. Section 3.2D of the Securities Purchase Agreement also does not raise a red flag. It is a representation by the investors that Roth has not made any representations or warranties to them. But the representation at issue, the water transfer promise, is a representation by the bank. Roth served as a conduit. It passed the information along, but it could not warrant whether the bank would make good on that promise. So there is also a genuine issue of material fact with respect to this provision. Third is Section 5.2 of the Securities Purchase Agreement. It is a merger clause that states the agreement supersedes all other agreements of the parties with respect to the subject matter. Again, this is an agreement between HII and the investors. The subject matter is the purchase of shares. It doesn't say water transfer isn't going to occur and it doesn't speak to understandings of the investors and the bank or Heartland and the bank. It is ambiguous. Reasonable minds could differ. It does not raise a red flag. And finally is Section 4.11 of the Third Modification Agreement. Again, that's the agreement that is between HII and the bank. An agreement that the investors are not parties to. It states the amendment constitutes the entire agreement with respect to the subject matter and there are no, at the end of the paragraph it states, there are no unwritten oral agreements among such parties. Again, this is aimed at amending covenants. The parties understood the water transfer acquisition would be the subject of a different contract. So this does not raise red flags. We also know there are other agreements. There's the credit agreement, the account purchase agreement. So this can only be speaking with respect to the waiver of covenants, the Third Modification Agreement. Now, I want to refer the Court to the case of Jacked Up v. Sara Lee, which I'm sure y'all are aware of. In that case, Jacked Up signed a licensing agreement with Sara Lee. The agreement contained a change of control provision, but Sara Lee represented that it did not plan at the time to sell the division or it would not sell it without the assumption of this and the new company did not assume the licensing agreement. This Court held that a genuine issue of material fact as to whether Jacked Up's reliance on Sara Lee's representation was justifiable, that a genuine issue of material fact existed. It reasoned that merely suggesting the possibility of selling the beverage division did not serve as a warning to Sara Lee, did not serve as a warning that Sara Lee was actively planning a sale. Now that case did involve a contract between the plaintiff and the defendant, unlike our case. But in light of the representation, it was held that it did not negate justifiable reliance. What we have here is, after the fact, Heartland Bank's attorneys combed through agreements to which HII was a party, trying to find anything that might seem like it raised a red flag. But the Texas Supreme Court says, red flags is plural, that it is not prepared to say that any one single factor could preclude justifiable reliance on its own as a matter of law and the Texas Supreme Court said that in the JP Morgan case. Further, it said we must view the circumstances in their entirety. When we look at these circumstances and in light most favorable to the investors, there is a genuine issue of material fact that exists as to the investor's justifiable reliance on Heartland's promise to admit the water transfer acquisition. So therefore, the court should reverse the district court's summary judgment as to the investor's fraud, negligent misrepresentation and promissory estoppel claims and it should remand those claims to the district court for trial. Now, unless your honors have any questions about that issue, I will move on to the other issues that we have briefed. The first issue that we brief is whether the district court erred in determining that the money hadn't received and unjust enrichment claims belonged to the bankruptcy estate. This court held in NRA 7Cs that a bankruptcy estate does not own claims asserted by bond holders fraudulently induced to invest in a bankrupt company. The estate was not in a position to assert the bondholder's reliance and it did not suffer damages on account of that reliance. Essentially, what the district court in this case did was it held that since the money was in the hands of HII at the time it was swept, those claims belonged to the bankruptcy estate. But the central inquiry is not the type of claim, it's the nature of the claim alleged. Here we must look at why that money was in those hands. The very company that swept the money, Heartland Bank, was the company that encouraged the investors to give it. The district court held that there was a genuine issue of material fact as to whether Heartland Bank had reason to expect the investors would rely on its promises. The complaint pleads this and the summary judgment evidence shows this. In fact, in sworn interrogatory responses, BTG Investments stated it would not have been logical to give this money but for these promises. The investors believed they weren't just purchasing shares, they were purchasing shares in a company that was very soon going to be allowed to acquire a profitable water management company, which is Water Transfer. The defaults were going to be waived and that the company was going to be permitted to continue to operate for at least some time down the line after it had acquired Water Transfer. The law says, with respect to unjust enrichment and money hadn't received, that unjust enrichment provides for restitution where a party receives a benefit unjustly, including through fraud. So, Texas law recognizes there are equitable reasons that money may be given back. Additionally, money hadn't received seeks to restore money where equity and good conscience require restitution. Here if we look at this equitably, the entity that is making the promises should not be permitted to have this money and those claims belong to the entity that relied on the false promises, the entity that was induced to invest. I'm sorry, not entity, the investors. The Northern District of Texas in Segner v. Sinclair, which we cite in our briefing, came down on this issue exactly opposite of what the district court did in this case. In that case, it applied this court's reasoning from 7Cs to claims for money hadn't received and unjust enrichment that were asserted by investors in connection with the massive Ponzi scheme. It held that such claims were not generalized grievances, but rather alleged a direct injury to specific investors. Because these claims are based on direct injury to the investors, summary judgment should be reversed on this ground and these claims should also be remanded to the district court. Your Honors, as to our other two issues on appeal, unless you have questions, I will stand on our briefing. Thank you, Counsel. Thank you. May it please the Court, my name is William Stowe. I represent Heartland Bank. This Court should uphold the district court's well-reasoned opinion below dismissing all of the plaintiff's claims. This was a case about highly sophisticated investors. It's undisputed that they were bankrupt, attempted to get their investments back, not from the people that caused it to go bankrupt, the management of the company that went bankrupt, but rather from a third party lender to the entity that they invested in. And worse, for conduct that was done not in relation to them as investors, but in relation to the entity that they invested in. Namely, the exercise of the bank's contractual rights to foreclose on the assets of the debtor, not their assets, when the debtor defaulted. This is an investor's remorse case. That's effectively what this is. The district court's opinion should be upheld for several reasons. First, the district court properly held that the plaintiffs lacked standing as to the money had and received in unjust enrichment claims. Second, as to the remaining claims of fraud, negligent misrepresentation and promissory estoppel, those claims failed on the merits. Third, even if the money had and received and unjust enrichment claims did not fail for lack of standing, they also failed on the merits. We'll get into the law on money had and received and unjust enrichment in just a minute. And then finally, all of the claims were barred by release and waiver and by the bankruptcy court's injunction. As to the first point on standing, that was the last point that my friend addressed and I'll address it first here. What's the test for standing? We all know it. Constitutional standing, injury in fact, causation, likelihood that the lawsuit can provide a redress for the injury. There's also prudential factors that are taken into account, one of which is extremely applicable here and that's that a plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. And in the bankruptcy context, where a company goes bankrupt, the trustee has exclusive standing to assert claims belonging to the estate. So what's the test for whether a claim belonged to the trustee of HII? The test, we know this from this court's opinion in matter of educator's group health trust case and that is whether under applicable state law, the debtor could have raised the claims as of the commencement of the case. So that's the question. Could HII's trustee have raised these claims as of the commencement of the case? And the answer is absolutely yes. How do we know that? If you look at some of the cases, the Don Hanvey case, Don Hanvey versus Unit Texas Drilling, a very similar case where, and you want to talk about not having a contract between the investor, that's exactly what they had in Don Hanvey. It was a situation where the plaintiff sued the defendant alleging that it basically caused the collapse of a drilling rig. The defendant did not have a contract with the plaintiffs. The defendant had a contract with the entity that went under, which was closely related to the plaintiffs. The plaintiffs were working interest owners. The debtor was a company that hired the defendant to drill the well and operate the rig. And the court held that the plaintiff's claims, which were related to the collapse of the drilling rig, were actually claims of the entity, the debtor entity. Why? Because the only reason the plaintiffs were harmed was because of the alleged harm to the drilling rig, which was wholly derivative of the harm to the debtor. And that's exactly what we have here. We have a contract not with the plaintiffs. We had a contract with HII. How do they claim their harm? Well, they claim their harm because of what we did to the debtor. You don't take my word for it. You just look at the record. Look at their own complaint. This is from the record at 193. They say that we, Heartland Bank, quote, froze HII's checking accounts and swept all of its cash, including plaintiffs' investments, thereby causing HII to collapse. So the only reason they claim they're harmed is because we did something to the debtor and we swept the debtor's cash collateral accounts, which they claimed contained I guess trace amounts from their investment funds. So it's not just that their harm is not independent of the harm to the debtor. It's wholly dependent on the harm to the debtor. They're not harmed unless we do that thing to the debtor. That's why they lack standing to assert any of their claims. The Seven Seas case that my friend mentioned, that case is distinguishable because the debtor itself was accused of wrongdoing. And this court found that one of the primary reasons that it was clear that the plaintiff's harm was not derivative of harm to the debtor was because they pointed the finger at the debtor. To quote this court, the court said, although the debtor is not named as a defendant, the bondholder's theory is that the debtor itself was a wrongdoer in conjunction with the third party defendants. It is thus not surprising that the injury that this claim alleges is not derivative of an injury to the debtor. The obvious implication being that how can your harm be derivative of harm to another when you're pointing the finger at that other? That's not the facts that we have here. They're not pointing the finger at HII. They're not saying that HII did anything wrong. On the contrary, they're saying that the wrong was done to HII. They have been very conspicuously clear of not alleging wrongdoing against Matt Fleming, who they took the deposition of Matt Fleming. The district court, you'll recall, only concluded that they lack standing as to money hadn't received in unjust enrichment, not as to the remaining three claims. We think respectfully that the district court should have gone further and held that they lack standing as to the fraud, negligent misrepresentation, and promissory estoppel claims as well, because again, the only reason they claim they're harmed in connection with those claims, they say, well, it's because we chose to invest. And the district court tried to make that of those claims. The damage element is loss of the investment. Why was the investment lost? They tell us why it was lost. Because we swept the cash accounts of HII. That is a claim that HII's trustee could have asserted. HII's trustee would have said that Matt Fleming was represented to. Matt Fleming of HII got the representation. That's what they alleged. They said that we told not them individually, that we told Matt Fleming and Roth Capital, and that they turned around and relayed those representations. So all of the claims they Moving on to the merits. Even if you say that, well, they had standing to assert at least some of their claims, the fraud, negligent misrepresentation, and promissory estoppel claims, no justifiable reliance as a matter of law. Reliance, as we all know, is an essential element of all of those three claims. And it's not just any reliance. It's justifiable reliance. And that element can be negated as a matter of law. It's not a fact question. My friend pointed out we ought to get to the jury. No. The Texas Supreme Court tells us it's not a fact question if there are indicators that eliminate reliance on that representation. In J.P. Morgan, my friend tried to distinguish it. There were only three red flags in J.P. Morgan. And I'll get to one that I think is really key. Here we had ten red flags. The district court chose to only rely upon four of those red flags, which I'll get to. But there were actually ten that are in the record. And if you look at the red flags that the my friend touched on, the Securities Purchase Agreement at Section 3.2D, this is the one that talks about Roth. Now, remember, a key allegation in this case was that we made the representation not to plaintiffs, but to Roth Capital and to HII, who then turned around and relayed it. And Section 3.2D says that the plaintiffs understood that Roth has acted solely as the agent of HII, and it goes on to say that they confirmed, the investors confirmed in a contract to which they were a party. Remember, we've heard a lot about we weren't a party to the third modification, but you were a party to the Securities Purchase Agreement. And you said in the Securities Purchase Agreement that you confirmed that none of such persons, meaning Roth, has made any representation or warranty to such purchaser in connection with the transactions contemplated herein. That directly contradicts what they said in the lawsuit. They sign a document that says we didn't get any representations from Roth, and they turn around and file a lawsuit and say we got a representation from Roth that Roth was passing on from Heartland Bank. Now, they said in their briefing, and I think that counsel for plaintiffs touched on this, they try and explain this away by saying, well, that doesn't say that Roth isn't making representations for others. It just says that I haven't gotten anything from Roth. The big problem with that argument is that Roth is making. It doesn't say that Roth isn't making any representations that originate with Roth, but we're not saying that Roth is not making any representations that it's passing on. It just says, point blank, Roth is not making any representations. That is a huge red flag. Another red flag, Section 3.1i. Counsel for Plaintiffs addressed this. This is the provision that said HII represented that no event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to HII or its subsidiaries, and it goes on to say that would be required to be disclosed under applicable securities laws. Respectfully, we disagree with the characterization of the record on that. Matthew Fleming testified in his deposition and the district court, I believe, cited this testimony that if the acquisition of water transfer LLC was certain enough, it had to be disclosed under applicable securities laws. If it's certain enough that it would have to be disclosed under applicable securities laws and it's not being disclosed in the securities purchase agreement and you're recognizing that and signing it, that should be a red flag. A sophisticated, undisputedly sophisticated investor would raise their hand and say, wait a second, this is saying that there's nothing that's not being disclosed that should be disclosed under applicable securities laws and the whole reason I'm doing this is because you guys are going to be requiring water transfer LLC. Why isn't that being mentioned in the document? That's a big red flag. A third red flag that the district court relied upon was Section 5.2, which was a merger clause in the securities purchase agreement. Now, which again, destroys any reliance on extra money. We can explain that because that was in an agreement that Heartland Bank was not a party to. So that was just an agreement between us and HII. Look at the language of Section 5.2. It makes no distinction. It says the transaction documents together with the exhibits and schedules thereto contain the entire understanding of the parties with respect to the subject matter hereof. It's saying that the entire understanding of the parties, which would include plaintiff investors, are all contained in these documents. If it's true, if you believe them that their understanding was actually that there was going to be an acquisition of water transfer LLC, that should raise a red flag. It doesn't say understanding of the parties only with respect to the particulars of this investment. It says with respect to the subject matter hereof. Isn't the acquisition of water transfer LLC related to the subject matter hereof? I would think it is if they're claiming in the lawsuit that that's the whole reason they invested. That's a huge red flag. We're now at four red flags. We've already exceeded the red flags in J.P. Morgan Chase. And by the way, the attempt to distinguish J.P. Morgan Chase on the ground that it was a contract between the parties, remember you heard counsel for plaintiffs make that distinction. Except for the plaintiffs here were parties to the contract, the securities purchase agreement. Let's go to the next red flag, the third modification agreement, which they claim we're not a party to that. Well, but the third modification agreement, which was admittedly between Heartland Bank and HII, that's referenced throughout the contract that they did sign, which was the securities purchase agreement. It's referenced throughout in the schedules to the securities purchase agreement, which the district court noted. And something that the district court could have noted but didn't is that the SPA, the securities purchase agreement, it doesn't just refer to the third modification agreement. It actually says that any reference to other securities purchase agreement should be understood with reference to such documents. And the record site for that is 1141. It says any description of any document included in the attached schedules is qualified in all respects by reference to such document. A sophisticated investor who reads that and reads numerous references to the third modification agreement says, hey, let me take a look at the third modification agreement. By the way, the record is a little equivocal on whether the plaintiffs actually did that and whether some of the third modification agreement, I think probably some did, but it doesn't really matter because the onus was on them to ask for it. And that's because it's in an agreement that they did actually sign. That's the fifth red flag. The district court also pointed out there was a portion of 3.1X in the securities purchase agreement that could have qualified as a red flag. And that's where the plaintiffs represented that except with respect to the material terms and conditions of the transactions contemplated by the transaction documents, including the HII confirms that neither it nor any other person acting on its behalf has provided any of the purchasers or their agents or counsel with any information that it believes constitute or might constitute material non-public information. That directly conflicts with the allegation in this suit that HII through Fleming actually did provide them with some very material information. They claim that the material information that he provided them with was the consent to the transfer acquisition. That directly is contradicted by 3.1X. Someone reading 3.1X says, wait a second, this isn't true. You did, HII, give me some material non-public information. So why are you including that in the document? The red flags are evident throughout the contract. JPMorgan Chase is not distinguishable. And as to the jacked up versus Sara Lee Corporation case that counsel for plaintiffs relied upon, that case is distinguishable because the court noted there that there was nothing that the plaintiff's investors in that case could have done to learn the real truth. What was the real truth in that case? The real truth was that the defendant did actually plan to sell off the division at issue, which would have allowed them under their license agreement with the other company to terminate the contract. And the court said that plaintiff's employees did the only thing he could to investigate. He asked the defendant's executives whether they currently planned to sell the company. It went on to say plaintiffs could not have learned the truth with reasonable investigation. Here they not only could have learned the truth, they did, in fact, learn the truth because they read the documents. They read the securities purchase agreements. But incidentally, they could have also asked Matthew Fleming, they could have reached out to him and said, hey, Mr. Fleming, I appreciate you telling me that Heartland Bank will consent to this water transfer acquisition, but why don't you actually show me where Heartland Bank says that? If they had done that, he would have had to have given them e-mails, which we put in the record, where it's conditioned left and right, up and down. It says there's only going to be consent if there is an execution of an inter-creditor agreement between us and the creditor for the entity that was going to be acquired, water transfer. Its lender was a company called Security Bank. And so one of these e-mails where we're dealing with HII, we say this is subject to an inter-creditor agreement between us and Security Bank in a form acceptable to us. That's one thing that they would have gotten had they reached out to Mr. Fleming. Another thing that they would have gotten is they would have gotten an e-mail from an individual with Heartland Bank to Mr. Fleming, and they actually cite this for the first page of the e-mail, but the very last statement in the e-mail, which they don't discuss, is the following. Closing of water transfer acquisition is subject to final approval of all transaction documents and execution and delivery of all amendments, subordinations, etc., required by lenders. That's about as conditional and non-final as you get. That's the kind of thing that they would learn. That's why the Sara Lee Corporation case is distinguishable. Now, some of these claims, they not only fail for the lack of the reliance element, but let's take a look at money had and received. We know under the case law that money had and received claims fail when the plaintiff doesn't have an ownership interest in the money. That's the Austin v. Duval case in which the court after money was forfeited by terms of the agreement. Well, here, once they gave the money to HII for their investments, what did they get in return? They got certificates of stock. The money was no longer theirs. That money became the property of the entity, HII. So when we swept those cash collateral accounts, when Heartland Bank swept those cash collateral accounts, they were not taking plaintiff's money. That was not money of plaintiffs to take. That was money of the entity that belonged to the entity. The money had and received claim fails on that ground as well. The unjust enrichment claim, we know from the case law that you cannot have unjust enrichment when it's based on conduct of the defendant pursuant to a contract, when a party exercises its own contractual rights. This court in Baxter v. PNC Bank National Association applied that principle. It held that the defendant quote, acted in accordance with its contractual rights under the deed of trust. It acted in accordance with our contractual rights under the lending documents to foreclose on the assets of HII. That's the predicate conduct that forms the basis of their unjust enrichment. They say that we hold those monies that we swept that they claim in equity and good conscience belong to them. That act was not wrongful. It was actually pursuant to contract. So that's an additional reason the unjust enrichment claim fails. And I just want to touch briefly on the release and waiver and the bankruptcy court's injunction. Admittedly, the district court did not get into that, but I think this is a pretty important point. All of these plaintiffs as equity interest holders, their claims as equity interest holders in the bankruptcy court were dealt with by the bankruptcy court's plan. And in particular, I'd like to call out one of the plaintiffs, an institutional investor, Magna Equities. It filed a proof of claim in the bankruptcy for the very investment that it tried to get back in this lawsuit. That proof of claim, it was an unsecured claim, was dealt with by the bankruptcy court's confirmed plan. They got a pro rata proportion of whatever it was and it said that was in full satisfaction of its proof of claim. The injunction in the bankruptcy court's order says you cannot file a lawsuit that would it did. I think that is a big deal and we looked at it and we thought that the district court here had concurrent jurisdiction to enforce that injunction along with the bankruptcy court. That's why we raised it. We were sued here. But I think that is an important point that should not be overlooked. And with that, I'll save the time and ask that you affirm the district court's well-reasoned opinion. Thank you, counsel. Rebuttal. Your Honors, the law should reflect what is right and what is just. Here, we have no agreement between the investors and Heartland Bank. While the investors were parties to the securities purchase agreement, that agreement doesn't state anywhere that water transfer isn't going to happen, that those representations were false. It doesn't say that. All of these things that identify as red flags, not only are they not contained in agreements between the parties, they are much more ambiguous than what we see in case law, in Jacked Up v. Surlee, in the J.P. Morgan case. With regard to Section 3.1 of the securities purchase agreement and what Fleming states about what had to be disclosed and when, I want to refer the court to pages that the water transfer acquisition could not be disclosed at that time and why it could not be disclosed. He also goes on to explain this again in another part of the record. Your Honors, I don't have the page numbers before me, but it is in our briefing on page 3.1. Now, counsel stated he thinks that the investors probably got the third modification agreement. This is not about what he thinks. This is about the record. Nowhere in the record does it state that they received it. And Fleming's testimony, Fleming actually says he's not even sure he gave it to them. He doesn't recall doing so. That's what the record states. Counsel discussed the Jacked Up v. Surlee case and how Jacked Up could not have learned the truth through reasonable investigation. The investors could not have done so here either. Both of these cases relate to promises, the promise not to sell or the promise to permit the transaction. These promises were made with the intent that they would not be sold. The district court found a genuine issue of material fact as to Heartland Bank's reason to expect that the investors were relying on these promises. And Fleming even says so. He says, I'm using this to solicit the investors. Heartland Bank was aware of this and continued to make these promises. Fleming's talking about soliciting the investors is in his March 6th email that contains a March 5th letter to Heartland Bank. Now Your Honor, with regard to the fraud based claims, fraud, negligent misrepresentation and promissory estoppel that the district court held the alleged direct injury to the investors. Your Honor, those claims are on all fours with seven C's. The estate would not have been in a position to make these claims. That is the question. And it did not suffer damages on account of such reliance. Now case law says that it can suffer damages based on the same course of conduct, the fact that Heartland took its money. But case law recognizes that the investors can have direct claims while the estate may have other claims it might assert as a result of wrongful conduct. And that is all I have, Your Honors. Thank you very much. Alright, thank you Counsel. The court will take this matter under advisement.